# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| The Prudential Insurance Co.<br>of America & Prudential Real Estate<br>Affiliates, Inc., | Civil No. 08-6438 (JMR/SRN) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| The Metrowide Group, et al., | |
| Defendants. | |

William S. O'Hare, Snell & Wilmer, LLP, 600 Anton Blvd., Suite 1400, Costa Mesa, CA 92626 and Robert R. Weinstine and Tiffany Blofield, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402, for Plaintiffs.

Matthew Schaap, Severson, Sheldon, Dougherty & Molenda, PA, 7300 West 147 Street, Suite 600, Apple Valley, MN 55124, for Defendants William L. Jorgensen and Bruce A. Jorgensen.

SUSAN RICHARD NELSON, United States Magistrate Judge

This case is before the Court on Plaintiffs' Motion to Dismiss [the] Counterclaim of William L. Jorgensen and Bruce A. Jorgensen [Doc. No. 34]. This matter was referred to the undersigned by an Order of Reference entered by the District Court on May 26, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b).

At the hearing, the Jorgensens made an oral motion seeking leave to amend their Counterclaim if the Court found that the Counterclaim's allegations were insufficient to survive the motion to dismiss. For the reasons set forth below, the Court recommends that the Motion to Dismiss be granted in part and denied in part and further recommends that Jorgensens' oral motion for leave to amend their Counterclaim be granted.

1

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Plaintiffs' Claims

Plaintiff The Prudential Insurance Company ("Prudential"), a New Jersey Corporation, and Plaintiff Prudential Real Estate Affiliates, Inc. ("PREA"), a Delaware Corporation, filed the Complaint in this action on December 19, 2008 [Doc. No. 1]. Prudential owns the Prudential name and related trademarks, which it licenses PREA to use. In 2002, PREA's predecessor in interest entered into a real estate brokerage franchise agreement with Defendant The Metrowide Group ("Metrowide"). Defendant E-Plus, a Minnesota corporation, is a general principal of Metrowide. Upon requests by Metrowide, PREA and its predecessor allowed Metrowide to add limited partners to its limited partnership, including Premier Realtors. As principals of Premier Realtors, William Jorgensen and Bruce Jorgensen, ("the Jorgensen Defendants" or "the Jorgensens"), entered into a Limited Partner Guarantee agreement with PREA's predecessor in April 2002. Under the guarantee agreement, the Jorgensens agreed to be bound by the franchise agreement and to guarantee performance of the franchise agreement by Metrowide. As limited partners of Metrowide, Premier Realty was allowed to use the Prudential name as part of its real estate business.

During the term of the franchise agreement, the Jorgensen Defendants paid a pro rata share of Prudential royalties to Metrowide. Metrowide then combined the Jorgensens' royalty fees with the fees of the other limited partners and used the funds to pay Prudential. According to Plaintiffs, at some point Metrowide failed to pay PREA royalty fees, ad fees, and other sums. None of Metrowide's limited partners paid the fees under the Limited Partner Guarantees. After Metrowide's failure to abide by the terms of the franchise agreement, PREA sent Metrowide a notice of default on August 11, 2008. At the same time, Metrowide sent a copy of the notice to

Metrowide's limited partners, including the Jorgensens. PREA, allegedly due more than $500,000 under the franchise agreement, informed Metrowide in the notice that, if the fees were not paid, the franchise agreement would be terminated in ninety (90) days. Because none of the defendants paid the amounts allegedly due, PREA terminated the franchise agreement as of November 12, 2008. Despite the termination of the agreement, the Plaintiffs allege that the Defendants continued to use Prudential's name and display Prudential's trademarks.

Based on these facts, Plaintiffs have asserted the following claims against the Jorgensen Defendants: breach of contract; trademark infringement; common law trademark and tradename infringement; unfair competition; violation of the Lanham Act; and dilution of a federally registered mark.

### B. The Jorgensen Defendants' Counterclaims

The Jorgensens allege they first learned of PREA's contention that Simonsen and Metrowide were not paying the royalty fees owed to Prudential in a copy of the notice of default sent to Metrowide. In late 2008, the Jorgensens, wanting to keep Premier Realty within the PREA brand regardless of whether Metrowide remained with PREA, began working with Peter Strand, PREA's Director of Franchise Development. Strand purported to assist the Jorgensens in locating a PREA buyer for the Jorgensens' real estate practice. The Jorgensens allege that, at the same time, Strand was working with Peggy Lovejoy, the owner of Lacrosse Prudential Company. The Jorgensens assert that, although Strand introduced Lovejoy as a potential purchaser of Premier Realty, in reality Strand instructed Lovejoy to recruit the Jorgensens' best real estate agents if the parties could not agree on an acceptable sales price.

Because Lovejoy at first appeared to be interested in purchasing the Jorgensens' real estate practice, the Jorgensens provided Lovejoy with confidential information about their

business. At Strand's recommendation, Lovejoy allegedly used the confidential information to attempt to recruit the Jorgensens' top real estate agents. At the hearing, counsel for the Jorgensens confirmed that none of the Jorgensens' agents actually left Premier Realty to work for Lovejoy. As a result of PREA and Lovejoy's attempts to hire Jorgensens' agents, the Jorgensens allege they were forced to sell their real estate practice at a deep discount.

On March 2, 2009, the Jorgensens filed a Counterclaim against the Plaintiffs[1] and a Crossclaim against Defendant Thomas Simonsen, a principal of Metrowide and E-Plus [Doc. No. 3]. The Counterclaim against PREA alleges causes of action for tortious interference with contractual business relations and tortious interference with prospective contractual relations.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure only require that a complaint or counterclaim contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The same rules apply to the pleading of a counterclaim. Reis v. Walker, 491 F.3d 868, 870 (8th Cir. 2007). The short and plain statement must provide "fair notice of the plaintiff's claim and grounds for relief." Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). On a motion to dismiss, a court must assume that all the facts alleged in the complaint are true and generally construe the complaint in the light most favorable to the plaintiff. Id.; Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009); Benton v. Merrill Lynch Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008). A court may, however, reject any unwarranted

---

[1] The Jorgensen Defendants asserted the counterclaim against both Prudential and PREA. (See Counterclaim at ¶ 1-2). In their motion to dismiss, the Plaintiffs assert that the Counterclaim should be dismissed as to Prudential because none of the factual allegations in the Counterclaim referred to or related to Prudential. In response, the Jorgensen Defendants conceded that the Counterclaim should only be plead against PREA and not Prudential. (Memo. of Law in Opp. to Pls.' Mot. to Dismiss Countercl. of William L. Jorgensen and Bruce A. Jorgensen at 2 n. 1). Therefore, to the extent the Counterclaim asserts claims against Prudential, the Motion to Dismiss should be granted.

inferences and conclusory or catch-all assertions of law. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009); Elam v. Neidorff, 544 F.3d 921, 926 (8th Cir. 2008).

A motion to dismiss should be granted only when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(b)(6); Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008); Reis v. Walker, 491 F.3d 868, 870 (8th Cir. 2007) (applying 12(b)(6) standards to dismissal of counterclaim). To survive a motion to dismiss, however, the complaint or counterclaim must allege facts which raise more than a speculative right to relief. Benton, 524 F.3d at 870; United States v. Moriarty, 2009 WL 995579, *5 (D. Minn. 2009) (both citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal is appropriate. Id. If the pleading only contains "a formulaic recitation of the elements of a cause of action" it should be dismissed. Twombly, 550 U.S. at 555; see also Northwest Airlines, Inc. v. Phillips, No. 07-4803, 2009 WL 1287497, *6 (D. Minn. May 7, 2009) (applying principals of Twombly to motion to dismiss counterclaim).

## III.    DISCUSSION

In order to establish a claim for tortious interference with contract, a plaintiff must show: (1) the existence of a contract; (2) that defendant knew of the contract; (3) that defendant intentionally procured a breach of the contract without justification; and (4) that plaintiff suffered damages as a direct result of the breach. Hammann v. Falls/Pinnacle, LLC, No. 07-515, 2008 WL 933446, *5 (Minn. Ct. App. June 18, 2008); Howard v. Minn. Timberwolves Basketball Ltd. P'ship, 636 N.W.2d 551, 559 (Minn. Ct. App. 2001); Bebo v. Delander, 632 N.W.2d 732, 738 (Minn. Ct. App. 2001). Similarly, intentional interference with prospective contractual relations

is established when a defendant, intentionally and without justification: (1) induces or otherwise causes a third person not to enter into or continue a prospective contract; or (2) prevents the plaintiff from acquiring or continuing the prospective contract. United Wild Rice v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982); Wells Elec., Inc. v. Schaper, No. 06-420, 2006 WL 2807179, *5 (Minn. Ct. App. Oct. 3, 2006); Cole Sales Solutions, Inc. v. Eddie Bauer, Inc., No. 02-661, 2002 WL 31505626, *5 (D. Minn. Nov. 8, 2002). In its current form, the Jorgensens' Counterclaim would not survive a 12(b)(6) motion to dismiss. In the interests of fairness, the Jorgensen Defendants should be given an opportunity to amend the Counterclaim to correct the pleading deficiencies outlined below.

### A. Existence of a Contract

The Jorgensens alleged the existence of a contract in the Counterclaim when they plead that, "Defendants had a sales force of approximately 30 salespersons at the time and had contracts with each such salesperson." (Counterclaim at ¶ 42). While the Jorgensens allege the existence of a contract, more details regarding that contract are needed to survive a motion to dismiss, including the identity of the parties to the contract, the type of contract, and the duration of the contract.

The identity of the parties to the contract is legally significant. A party claiming interference with contractual rights must first establish there is a contract in existence that conveys rights and duties on both parties. Karnewie-Tuah v. Frazier, 757 N.W.2d 714, 719 (Minn. Ct. App. 2008). Further, a party generally cannot interfere with the party's own contract with another. Nordling v. N. States Power Co., 478 N.W.2d 498, 505 (Minn. 1991); Wikstrom v. Little Earth of United Tribes Housing Corp., No 06-1023, 2007 WL 1746908, *4 (Minn. Ct. App. June 19, 2007).

6

More information about the contract is necessary for the court to determine the viability of the tortious interference claim. For example, the Counterclaim does not identify specifically who were the parties to the contract, and this fact was not made clear at oral argument. At the hearing, both counsel for PREA and counsel for the Jorgensens appeared to suggest that, under Minnesota real estate law and the franchisee agreement, only Metrowide could have contracted with the real estate brokers. Later in the hearing, however, counsel for the Jorgensens suggested that, nevertheless, the Jorgensens individually contracted with the real estate agents. It is not clear to the Court whether the real estate brokers had a contract with Metrowide, Premier Realty, or the Jorgensens individually. Nor does the Counterclaim allege the type of contracts at issue, whether the contracts were employment agreements, independent contractor agreements, or non-compete agreements and whether the contracts were for a specific time period or instead were terminable at will. In terms of the claim for tortious interference with prospective contractual relations, the Jorgensens have not identified what prospective contract was not entered into or what contract was not continued, which is significant given that no real estate agents left the Jorgensens to work for Lovejoy. The Jorgensens should amend the Counterclaim to provide these details and attach copies of the contracts at issue to the amended counterclaim.

### B.    Actual Breach of Contract

The Jorgensens' Counterclaim does not allege that the sales agents' contracts were breached. In fact, at the hearing, counsel for the Jorgensens admitted "I can safely say that I don't think anyone has gone to Peggy Lovejoy's operation . . . I am not aware of any agents going to Peggy Lovejoy." The parties dispute whether the Jorgensens must allege that an actual breach of a contract occurred, or whether it is sufficient to merely allege interference that did not

result in a contract breach. While the law is unsettled on this issue, even if an actual breach is not required, the Jorgensens did not sufficiently plead any interference.

Early Minnesota cases considering liability for tortious interference concluded that a party could bring a claim for tortious interference with contract even where an actual breach of the contract did not occur. Quoting an American Law Reports article regarding injuries to property rights, in 1938 the Minnesota Supreme Court stated that interference with a contract, "includes not merely the procurement of a breach of contract, but all invasion of contract relations, so that any act injuring or destroying persons or property which retards, makes more difficult or prevents performance, or makes performance of a contract of less value to the promisee, may fall within its scope." Johnson v. Gustafson, 277 N.W. 252, 201 Minn. 629 (Minn. 1938). This language is dicta, however, because the plaintiff in that case alleged that an actual breach of the contract occurred. Id. at 254. In later years, this language was again quoted in dicta in a number of cases. Stephenson v. Plastics Corp. of America, 150 N.W.2d 668, 276 Minn. 400 (Minn. 1967); Royal Realty Co. v. Levin, 244 Minn. 288, 291, 69 N.W.2d 667, 671, n. 4 (1955); Continental Research, Inc. v. Cruttenden, Podesta & Miller, 222 F. Supp. 190, 198 (D. Minn. 1963).

In recent years, the Minnesota courts appear to have retreated from this broad view of the elements for tortious interference. Schaetzel v. Minn. Mining & Mfg. Co., No. C5-98-2023, 1999 WL 289286, *2 (Minn. Ct. App. May 11, 1999) ("The tort of interference with contract, however, has evolved significantly since Royal Realty . . . Since 1994, Minnesota courts have consistently ruled that tortious interference requires that the interference cause *breach* of an existing contract") (emphasis in original); see also Cyberoptics Corp. v. Yamaha Motor Co., Ltd, No. 95-1174, 1996 WL 673161 (D. Minn. July 29, 1996). The last four times the Minnesota

Supreme Court has articulated the elements of a claim for tortious interference with contract, the court has included breach of the contract as an element. Kallok v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998); Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1984); Furlev Sales & Associates, Inc. v. North American Auto. Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 1982); Nat'l Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 741 (Minn. 1982).

In 2002, the Minnesota Supreme Court addressed the availability of injunctive relief for a tortious interference claim where the contract breach had yet to occur. Metro. Sports Facilities Comm'n v. Minn. Twins P'ship, 638 N.W.2d 214, 228 (Minn. Ct. App. 2002). The defendant in that case argued injunctive relief was not available for tortious interference claims because no breach of contract had occurred. Id. Rejecting the defendants' argument, the court held that, "once a party to a contract has established that this tort applies, the courts may hold that third party liable for resulting damages as well as grant necessary injunctive relief." Id. (citing dicta in Kallok, 573 N.W.2d at 361); see also A & L Laboratories, Inc. v. Bou-Matic LLC, No. 02-4862, 2003 WL 21005305, *3 (D. Minn. April 25, 2003) (denying motion to dismiss tortious interference claim where breach had not occurred because plaintiff was only seeking injunctive relief). In this case, however, the Jorgensens do not seek injunctive relief, only damages.

Based on Metro Sports and A & L Laboratories, a number of judges in this district have held or suggested in dicta that an actual breach of contract is not a necessary element of the claim. Northern PCS Services, LLC v. Sprint Nextel Corp., 2007 WL 951546, *14 (D. Minn. 2007) (citing A & L Laboratories and stating in dicta that party may bring claim for tortious interference even where no breach occurred); U.S. Power, Inc. v. Siemens Power Transmission & Distribution, LLC., No. 05-525, 2006 WL 1876686, *2 (D. Minn. July 5, 2006) (holding party could state claim for interference with contract where the "the tortfeasor obtained or attempted to

obtain the breach of that contract"); Telluride Asset Mgmt., LLC v. Bridgewater Assoc., Inc., No. 04-4862, 2005 WL 1719204 (D. Minn. July 11, 2005) (holding plaintiff did not need to allege an actual breach of contract to survive motion to dismiss; plaintiff can establish claim by asserting inference that made performance of plaintiff's contract more difficult or of less value).

Even if an actual breach of contract is not required for a tortious interference claim, the Jorgensen defendants have not adequately pleaded their claim. In the few cases that held a breach is not required, the court required the party asserting a claim for tortious interference to establish that the tortfeasor's actions made the contract more burdensome or difficult to perform or made performance of the contract less valuable. Telluride, 2005 WL 1719204 at *2; Johnson, 277 N.W. at 201.

At the hearing, the Jorgensens asserted that PREA's actions "devastated" their business and forced them to sell their business prematurely. But the Jorgensens have not alleged how PREA's actions made the sales agents' contracts less valuable or more difficult to perform. The Court is especially concerned about the Jorgensens' ability to plead this element since PREA's allegedly interfering actions appear to have been unsuccessful. It would be a different situation if the Jorgensens were seeking injunctive relief for actions that were incomplete as opposed to the instant case where PREA's alleged interference was not incomplete, but rather, was unsuccessful. Given that the sales agents contracts were not breached, the Jorgensens must plead more details regarding how PREA's alleged interference made the contracts more burdensome or of less value.

    **C.    Justification**

Lack of justification is an element of both types of tortious interference. Bebo, 632 N.W.2d at 738; United Wild Rice, 313 N.W.2d at 633. Generally, "[w]hether interference is

justified is ordinarily a factual determination of what is reasonable conduct under the circumstances." Kallok, 573 N.W.2d at 362 (citing Kjesbo, 517 N.W.2d at 588). A defendant's actions are justified if it pursues its legal rights through legal means. See e.g. Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 32-33 (Minn. 1982); Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) (holding tortious interference claim "does not lie where the alleged interferer has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected and employs no improper means"); Ludowese v. Redmann, 479 N.W.2d 59, 63 (Minn. Ct. App. 1991) (affirming dismissal of tortious interference claim where defendant's actions were justified as a matter of law because defendant lawfully exercised statutory right of first refusal).

Justification is lost when malice or a bad motive is present. Nordling, 478 N.W.2d at 506, cited in Metge v. Cent. Neighborhood Improvement Ass'n, 649 N.W.2d 488, (Minn. Ct. App. 2002). As the Minnesota Supreme Court explained, "while bad motive or malice may not be an element of the tort of tortious interference, it is often persuasive evidence on whether the defendant's conduct was proper and justified." Nordling, 478 N.W.2d at 506. In the context of tortious interference, malice means wrongful conduct done without legal justification or excuse and actual malice "in the sense of ill-will" is not required. Id.

In general, the burden of proving justification is on the defendant. Kjesbo, 517 N.W.2d at 588; Kallok, 573 N.W.2d at 363; Guidant Sales Corp. v. George, 05-2890, 2006 WL 3307633, *5 (D. Minn. Nov. 14, 2006). A court may, however, grant a motion to dismiss if on the face of the pleadings it appears the defendant's alleged interference was contractually or statutorily permissible. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982-83 (8th Cir. 2008); Pugh v. Westreich, Case No. 04-657, 2005 WL 14922 * 4 (Minn. Ct. App. March 29, 2005)

(affirming dismissal of claim for tortious interference because defendant's actions conformed with statutory and contractual requirements); Ludowese, 479 N.W.2d at 63; see also R.A., Inc. v. Anheuser-Busch, Inc., 556 N.W.2d 567, 571 (Minn. Ct. App. 1997) (holding defendant was justified in its actions as a matter of law because defendant was exercising its contractual rights); Hollywood Healthcare Corp. v. Deltec, Inc., No. 04-1713, 2004 WL 118610, *6 (D. Minn. May 17, 2004) (denying motion for preliminary injunction because plaintiff did not establish defendant acted improperly when actions defendant took were permitted under a contract). "If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)." Noble Sys. Corp., 543 F.3d at 983. The court may also consider public records or materials embraced by the complaint in ruling on such a motion to dismiss. Id.

The franchisee agreement was attached to the Plaintiff's Complaint in this matter and may be considered by this Court without converting the motion to dismiss to a motion for summary judgment. On the face of the franchisee agreement at § 11.07, it appears PREA was legally authorized to solicit or hire the Jorgensens' sales agents to keep them under the Prudential brand. Given that PREA's alleged actions soliciting the real estate agents away from the Jorgensens were contractually authorized, this court could dismiss the tortious interference claim under Fed. R. P. 12(b)(6). In the amended counterclaim, the Jorgensens must allege facts, if there are any, which would establish that PREA's justification or privilege to interfere with the contract was lost because of bad faith or because PREA used unlawful means to allegedly interfere with the real estate brokers' contracts.

### D. Causation

The Counterclaim is notably lacking any allegations supporting a finding that PREA's actions were the proximate cause of the Jorgensens' damages. To survive a motion to dismiss, a complaint must allege not only the existence of a contract, but allegations that the defendant's actions procured the breach or attempted breach of the contract. Royal Realty, 244 Minn. at 294. "It is, of course, essential that some acts of the defendants were the proximate cause of the breach. It is not enough that the defendants merely knew of the contractual relationship and obtained its benefits for themselves." Id. This element will be especially significant in this case where PREA's allegedly interfering actions were unsuccessful. Fox Sports Net North, LLC v. Minn. Twins P'ship, 319 F.3d 329, 336 (8th Cir. 2003) (affirming summary judgment because plaintiff failed to establish claim for tortious interference where defendant contacted sports teams to breach contract with plaintiff, but defendant was unsuccessful).

The vast majority of the allegations in the Counterclaim are against Lovejoy, who is not a party to this action. The only allegation in the Counterclaim against PREA with respect to causation is the conclusory statement, "[a]s a result of PREA's efforts to recruit Defendants' agents, Defendants were forced to sell their real estate practice at a deep discount." At the hearing, counsel for the Jorgensens suggested that PREA's actions caused interference with the sales agents' contracts because PREA provided confidential information about Premier Realty's sales numbers and operations to Lovejoy. In the Counterclaim itself, however, the Jorgensens stated that they were the ones who provided the confidential information to Lovejoy, not Strand or PREA. Furthermore, the Counterclaim does not contain allegations explaining how PREA's unsuccessful attempts to allegedly solicit sales agents resulted in damages to the Jorgensens in the form of a decreased sale price for their business. This is especially troubling given

Jorgensens' counsel's statement at the hearing that discovery was necessary because "we don't know what Strand and PREA discussed or did." The Court finds it troubling that the Jorgensens have not plead the necessary causal connection between PREA's actions and the Jorgensens' decision to incur damages. Given that PREA was unsuccessful in soliciting any agents to work for Lovejoy, perhaps the Jorgensens acted precipitously and prematurely in selling their business at a great loss. In the amended counterclaim, the Jorgensens should plead additional facts, if there are any, which show how PREA and/or Strand's actions were the proximate cause of the Jorgensens' damages.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Dismiss Counterclaim of William L. Jorgensen and Bruce A. Jorgensen [Doc. No. 34] be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent the Counterclaim is asserted against Prudential, the Motion to Dismiss should be **GRANTED**;

2. To the extent the Counterclaim is asserted against PREA, the Motion to Dismiss should be **DENIED without prejudice**;

   A. The Jorgensen Defendants should be given leave to amend their Counterclaim to address the deficiencies outlined in this Report and Recommendation within thirty (30) days; and

   B. PREA should not be prejudiced from bringing a motion to dismiss regarding the amended counterclaim.

Dated: July 16, 2009                                           s/ Susan Richard Nelson  
                                                                                       SUSAN RICHARD NELSON  
                                                                                       United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 31, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.